UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

02 AUG 13 AM 9:3

U.S. DISTRICT COURT
N.D. OF ALABAMA

WILLIE BYRD, JR.                    )
                                    )
        Plaintiff,                  )
                                    )
vs.                                 )          Civil Action No. CV-00-S-1152-S
                                    )
WILLIAM J. HENDERSON,               )
POSTMASTER GENERAL,                 )          ENTERED
                                    )
        Defendant.                  )          AUG 13 2002

MEMORANDUM OPINION

Plaintiff, Willie Byrd, Jr., asserts claims of disability discrimination, retaliation, and

violations of the Family and Medical Leave Act of 1993, and, the Federal Employees Compensation

Act. The action presently is before the court on defendant's motion to dismiss or, in the alternative,

for summary judgment.

I. FACTUAL BACKGROUND

Willie Byrd, Jr., began employment with the United States Postal Service ("USPS") in 1984,

as a Multi-Position Letter Sorting Machine Worker. Apparently, Byrd did not successfully complete

the training for that position and was terminated. Later that year, however, he was rehired as a Mail

Handler. Byrd became a "group leader" during 1995. The USPS issued a "Notice of Proposed

Removal" to Byrd on July 21, 1999, and he has been in a non-pay status since that date. During the

time period relevant to this action, Byrd's immediate supervisor was Eugene Bennett, Supervisor

of Distribution Operations. In turn, Bennett's supervisor was Art Hill, Manager of Distribution

Operations.

Byrd suffers from a foot condition, multiple plantar fasciitis, which was diagnosed during

July of 1998. Byrd contends that the pain caused by this condition limits his ability to stand and

walk, and that he is unable to perform yard work or participate in sports. Byrd receives treatment in the form of cortisone shots to relieve his pain. Byrd filed an application for disability retirement benefits 1999, with the Office of Personnel Management ("OPM") on September 27, 1999.[1] The application for benefits was denied on May 10, 2000, because OPM determined that Byrd did not meet the criteria for entitlement.[2]

Prior to those events, however, and because of his foot pain, Byrd had filed a claim with the Office of Worker's Compensation Programs ("OWCP"), on August 24, 1998. OWCP accepted his claim and began paying benefits. Byrd received intermittent compensation for the time period beginning July 7 through December 28, 1998. Plaintiff returned to regular duty and worked until he was suspended on an emergency basis on June 25, 1999. On August 24, 1998, Byrd also had filed a claim for a scheduled award based upon his occupational disease. He filed additional claims on July 7, 1999 and April 3, 2000. At the request of OWCP, Byrd was examined by Dr. John W. Bacon on May 15, 2000. Dr. Bacon opined that Byrd had "no impairment for his plantar fasciatis [sic]." As a result, on July 5, 2000, OWCP denied Byrd's claim for compensation, stating "the medical evidence is sufficient to establish that there is no permanent partial impairment to your feet as a result of the bilateral plantar fasciatis [sic] condition."

Byrd asserts that his supervisor, Eugene Bennett, stated during safety meetings that Hill did not like employees to file worker's compensation claims. Byrd believed that those statements were directed at him.

During his employment with the USPS, Byrd filed several equal employment opportunity

---

[1]Defendant's Exhibit List and Materials in Support of Motion to Dismiss or, in the Alternative, for Summary Judgment (doc. no. 9), Exhibit 16.

[2]*Id.*, Exhibit 18.

("EEO") complaints.   The first, filed on May 24, 1999, alleged that USPS management discriminated against him based on his disability.[3]  Byrd also alleged that USPS retaliated against him for filing a worker's compensation claim.  Byrd's second EEO complaint was filed on June 11, 1999, and he again alleged that he was discriminated against based on his disability.[4]  In his third complaint, filed June 23, 1999, Byrd alleged disability discrimination and retaliation for prior EEO activity.[5]  He also complained that he had been improperly denied leave to which he was entitled under the Family and Medical Leave Act of 1993.  Byrd filed additional complaints on July 19, 1999,[6] and on August 24, 1999,[7] both alleging disability discrimination.

Byrd received a "letter of warning" for being away from his work area without authorization on February 10, 1999.  He received a fourteen day suspension during March of 1999 for failing to follow instructions.  He received another fourteen day suspension during May of 1999, also for failing to follow instructions.

On June 9, 1999, Byrd requested leave to attend a medical appointment scheduled for June 14, 1999, related to his foot condition.  On the request form, he indicated the following: "medical appointment — worker's comp injury — FMLA."  Byrd's request was denied by Bennett due to staffing needs.  Byrd reiterated his request on June 11, 1999, and it was approved pending Byrd's submission of appropriate medical documentation.  Byrd submitted the documentation to Bennett upon his return to work, but when he asked Bennett to return the originals, Bennett charged him as being Away Without Leave ("AWOL").

---

[3]*Id.*, Exhibit 2.
[4]*Id.*, Exhibit 3.
[5]*Id.*, Exhibit 6.
[6]*Id.*, Exhibit 7.
[7]*Id.*, Exhibits 10 & 11.

3

On June 25, 1999, Byrd received an emergency suspension because he allegedly threatened Bennett.  On July 21, 1999, Byrd was issued a Notice of Proposed Removal, which was held in abeyance pending a final determination of his application for disability retirement benefits.[8]

Byrd filed a petition for bankruptcy under Chapter 13 of the Bankruptcy Code on June 29, 1998.  He did not list any pending claims in the bankruptcy petition, and he did not amend the petition to include the claims he has asserted in this action.  The motion to dismiss for material default filed by the bankruptcy trustee was granted on March 7, 2001.[9]

## II. STANDARD OF REVIEW

If, as here, matters outside the pleadings are presented to and considered by the court when ruling upon a Rule 12(b)(6) motion to dismiss, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Rule 12(b), Fed. R. Civ. P.; *see also, e.g., Arnold v. United States Postal Service*, 649 F. Supp. 676, 678 (D. D.C. 1986)(Richey, J.).  This allows the court's inquiry to be fact specific and allows the nonmovant to demonstrate the existence of any genuine issues of material fact. *But see Denis v. Liberty Mutual Insurance Co.,* 791 F.2d 846, 850 (11th Cir. 1986) (recognizing an exception to the requirement that the court afford plaintiff notice of its intent to convert and an opportunity to supplement the record); *Property Management & Investments, Inc. v. Lewis*, 752 F.2d 599, 605 (11th Cir. 1985) (same).

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and

---

[8]OPM's decision to deny the application was upheld by the Merit Systems Protection Board on November 5, 2001. *See* Motion to Amend Complaint to Add Claim Concerning Disability Retirement Benefits (doc. no. 21), Exhibit 9.

[9]Defendant's Exhibit List and Materials in Support of Motion to Dismiss or, in the Alternative, for Summary Judgment (doc. no. 9), Exhibit 23.

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)) (internal quotation marks and citations omitted); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

### III. DISCUSSION

A.    **Jurisdiction**

Defendant asserts that plaintiff's complaint should be dismissed because he has failed to invoke the court's jurisdiction over defendant. The complaint alleges the following with respect to jurisdiction:

1.    This is a suit to obtain relief for retaliation, disability discrimination, and violations of the Family and Medical Leave Act.

2.    The plaintiff also seeks to recover damages for violations of the Federal

5

Workers' Compensation Act [sic] and the Rehabilitation Act of 1973, as amended.

3.      The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331[10] and 1343,[11] 28 U.S.C. §§ 2201[12] and 2202.[13] Venue is proper under 28 U.S.C. §

---

[10]That statute provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[11]28 U.S.C. § 1343 provides:

      (a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

            (1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;

            (2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;

            (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

            (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

      (b) For purposes of this section —

            (1) the District of Columbia shall be considered to be a State; and

            (2) any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

[12]28 U.S.C. § 2201 provides:

      (a) In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

      (b) For limitations on actions brought with respect to drug patents see section 505 or 512 of the Federal Food, Drug, and Cosmetic Act.

[13]28 U.S.C. § 2202 provides that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by

6

1391, as a substantial part of the events in question occurred in Jefferson
County, Alabama.[14]

Defendant contends that the general jurisdiction statutes referenced in the complaint do not

constitute waivers of sovereign immunity, such that they confer jurisdiction over federal defendants.

*See Leistiko v. Stone*, 134 F.3d 817, 820 (6th Cir. 1988).  As two respected commentators have

explained:

> The doctrine of sovereign immunity prohibits any suit to be maintained
> against the United States without its consent.  Thus, the jurisdictional allegations in
> an original action or a counterclaim against the United States must include a
> reference to the statute containing an express or implied waiver of the government's
> immunity from suit.  It is the consent to be sued that defines the court's jurisdiction
> to entertain the suit.

5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* 2d § 1212 (2d

ed. 1990), at 126-27.

Here, plaintiff's jurisdictional allegation refers only to general jurisdiction statutes, which

are insufficient to confer jurisdiction over defendant.  The court may look beyond that allegation,

however, to determine whether its jurisdiction has been properly invoked.

> [I]f a party seeking to invoke federal jurisdiction asserts a substantial claim under a
> federal statute, both the jurisdictional prerequisite and the pleading requirements of
> Rule 8(a)(1) are satisfied.  However, this does not mean that the court may look only
> to the formal jurisdictional allegation to determine whether to proceed with the
> action.  As is true of determining whether a federal district court actually has subject
> matter jurisdiction, compliance with Rule 8(a)(1) is ascertained by looking at the
> entire complaint, not merely to what purports to be the jurisdictional statement.

*Id.* § 1206, at 89-90.

The complaint's initial allegations refer to claims for relief for "retaliation, disability

discrimination, and violations of the Family and Medical Leave Act," as well as "the Federal

---

such judgment.

[14]Complaint (doc. no. 1), at 1.

Workers' Compensation Act [sic] and the Rehabilitation Act of 1973, as amended." While those

statements contain no specific statutory references, and the drafting of the complaint leaves much

to be desired, the court concludes that, at a minimum, plaintiff has sufficiently invoked the court's

jurisdiction over defendant by asserting claims under the Rehabilitation Act of 1973, because that

statute contains an express waiver of sovereign immunity. *See* 29 U.S.C. § 794a(a)(1).[15]

**B.      Judicial Estoppel**

Defendant next contends that plaintiff's claims are barred by the doctrine of judicial estoppel

because plaintiff failed to amend his Chapter 13 bankruptcy petition to reflect his pending

administrative and judicial claims.  Plaintiff argues that because defendant failed to properly plead

this affirmative defense, and the defense accordingly has been waived.  Federal Rule of Civil

Procedure 8(c) provides:

> In pleading to a preceding pleading, a party shall set forth affirmatively
> accord and satisfaction, arbitration and award, assumption of risk, contributory
> negligence, discharge in bankruptcy, duress, *estoppel*, failure of consideration, fraud,
> illegality, injury by fellow servant, laches, license, payment, release, res judicata,
> statute of frauds, statute of limitations, waiver, and any other matter constituting an
> avoidance or affirmative defense. [Emphasis supplied.]

The defense of estoppel is specifically identified as an affirmative defense in Federal Rule of Civil

Procedure 8(c).  Defendant did not assert this defense in its answer, but did so in its motion to

dismiss, or in the alternative, for summary judgment.  Plaintiff's argument that defendant failed to

---

[15]29 U.S.C. § 794a(a)(1) provides:

> The remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964
> (42 U.S.C. 2000e-16), including the application of sections 706(f) through 706(k) (42 U.S.C. 2000e-
> 5(f) through (k)), shall be available, with respect to any complaint under section 791 of this title, to
> any employee or applicant for employment aggrieved by the final disposition of such complaint, or
> by the failure to take final action on such complaint.  In fashioning an equitable or affirmative action
> remedy under such section, a court may take into account the reasonableness of the cost of any
> necessary work place accommodation, and the availability of alternatives therefor or other appropriate
> relief in order to achieve an equitable and appropriate remedy.

raise the defense of estoppel in its pleadings thus is unavailing.

As the Eleventh Circuit observed in *Hassan v. United States Postal Service*, 842 F.2d 260 (11th Cir. 1988), "[t]he purpose of Rule 8(c) is simply to guarantee that the opposing party has notice of any additional issue that may be raised *at trial* so that he or she is prepared to properly litigate it.   When a plaintiff has notice that an affirmative defense will be raised at trial, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice." *Id.* at 263 (emphasis added) (citing *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 350, 91 S. Ct. 1434, 1453, 28 L.Ed.2d 788 (1971)).   Because defendant raised the defense of judicial estoppel well before the trial stage, the concerns of undue surprise embodied in Rule 8(c) are not present.   This is particularly true in view of the fact that plaintiff was questioned by defendant about his bankruptcy proceedings during his deposition.[16]   Accordingly, the court concludes that defendant did not waive the defense of judicial estoppel.

The Eleventh Circuit recently addressed, as a matter of first impression, the applicability of the doctrine of judicial estoppel in the context of a bankruptcy proceeding.   *See Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002).   The *Burnes* court explained that, under the doctrine of judicial estoppel, "a party is precluded from 'asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.   Judicial estoppel is an equitable concept intended to prevent the perversion of the judicial process.'" *Id.* at 1285 (quoting 18 James Wm. Moore *et al.*, *Moore's Federal Practice* § 134.30 (3d ed. 2000), at 134-62).   The *Burnes* court observed that, in this Circuit, two factors are considered in determining whether the doctrine applies to a particular case.   "First, it must be shown that the allegedly inconsistent

---

[16]Defendant's Exhibit List and Materials in Support of Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (doc. no. 9), Exhibit 1, at 51-53.

positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Id.* at 1285 (quoting *Solomon Smith Barney, Inc. v. Harvey,* 260 F.3d 1302, 1308 (11th Cir. 2001)). The *Burnes* court determined that those factors were consistent with the recent Supreme Court decision in *New Hampshire v. Maine,* 532 U.S. 742, 121 S. Ct. 1808, 149 L.Ed.2d 968 (2001), wherein the Supreme Court enumerated several factors to guide courts when determining whether the doctrine was properly invoked. Those considerations are: (1) whether the present position is "clearly inconsistent" with the earlier position; (2) whether the party succeeded in persuading a tribunal to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled; and, (3) whether the party advancing the inconsistent position would derive an unfair advantage on the opposing party. *Id.* at 750-51, 121 S. Ct. at 1815. The *Burnes* court cautioned, however, that the two factors used in the Eleventh Circuit "are not inflexible or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case when considering the applicability of this doctrine." *Burnes,* 291 F.3d at 1286.

The Eleventh Circuit next reviewed a debtor's duties to disclose under bankruptcy law, summarizing the issue as follows:

> A debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court. 11 U.S.C. § 521(1), and 541(a)(7). The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change. *See [In re] Coastal Plains,* 179 F.3d [197] at 208 [(5th Cir. 1999)]. Full and honest disclosure in a bankruptcy case is "crucial to the effective functioning of the federal bankruptcy system." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co. et al.,* 81 F.3d 355, 362 (3d Cir. 1996). For example, creditors rely on a debtor's disclosure statements in determining whether to contest or consent to a no asset discharge. Bankruptcy courts also rely on the accuracy of the disclosure

statements when considering whether to approve a no asset discharge. Accordingly, "the importance of full and honest disclosure cannot be overstated." *Id.*

*Burnes*, 291 F.3d at 1286.

After addressing the particular arguments made by the plaintiff in *Burnes*, the Eleventh Circuit concluded that the doctrine of judicial estoppel applied to bar his claims for monetary damages, but that it did not bar his claims for equitable relief — namely, prohibiting his employer from engaging in illegal employment practices, and that his employer be required to adopt employment practices that comport with federal law. *Id.* at 1288. In reaching this conclusion, the Eleventh Circuit determined that the plaintiff's "undisclosed claim for injunctive relief offered nothing of value to the [bankruptcy] estate and was of no consequence to the trustee or the creditors." *Id.* at 1289.

Here, plaintiff, who was represented by an attorney, filed a petition for bankruptcy under Chapter 13 of the Bankruptcy Code on June 29, 1998.[17] On the "Statement of Financial Affairs" attached to that petition, plaintiff indicated that there were no suits or administrative proceedings to which he was a party had been filed within one year preceding the filing of his bankruptcy case. On "Schedule B — Personal Property," also attached to the bankruptcy petition, plaintiff listed no contingent or unliquidated claims. Plaintiff's bankruptcy plan was confirmed by United States Bankruptcy Judge Benjamin Cohen on October 13, 1998, and plaintiff was directed to pay to the bankruptcy trustee $470 on a bi-weekly basis, for a period of sixty months.[18]

Plaintiff moved the bankruptcy court to amend his Chapter 13 schedules on December 7, 1998, to add a creditor, and to increase his plan payment to $506 bi-weekly. An order granting

---

[17]Defendant's Exhibit List and Materials in Support of Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (doc. no. 9), Exhibit 23.

[18]*Id.*

11

plaintiff's motion was entered on January 6, 1999.  Plaintiff filed a motion to suspend payments on October 25, 1999, stating as grounds for the motion that he was "no longer able to work at his previous job with the United States Postal Service due to medical disabilities," and that he "should start receiving disability proceeds on or about January 1, 2000, and will be able to resume his Chapter 13 payments at that time."[19]  The motion was granted on November 1, 1999.

The bankruptcy trustee filed a motion to dismiss plaintiff's bankruptcy case for a material default in plan payments on March 20, 2000.  Following the filing of that motion, plaintiff appeared before the bankruptcy court several times.  The bankruptcy court notes indicate that plaintiff appeared on April 18, 2000, and testified that he would pay his case current prior to the next hearing.  He again appeared in bankruptcy court on May 16, 2000, and the case was continued to June 20, 2000, to provide plaintiff an opportunity "to check on Workman's Comp settlement and status of disability."[20]  Plaintiff appeared in bankruptcy court at least five more times on July 18, August 22, September 26, and November 14, 2000, and finally on January 16, 2001.  The trustee's motion to dismiss for material default ultimately was granted on March 6, 2001.[21]

While plaintiff's bankruptcy case was ongoing, plaintiff filed six EEO complaints, on the following dates:  May 24, 1999; June 11, 1999; June 23, 1999; July 19, 1999; and, two on August 24, 1999.  He filed the present action on May 1, 2000, in which he seeks monetary damages and unspecified injunctive relief.

It is undisputed that plaintiff's financial disclosure forms, and the December 7, 1998 amendment to the Chapter 13 schedules, were submitted to the court under oath.  It also is

---

[19] *Id.*

[20] *Id.*

[21] *Id.*

undisputed that plaintiff had unliquidated claims which accrued during the pendency of his bankruptcy case, and of which he had knowledge, triggering his obligation to amend the Chapter 13 bankruptcy schedules.  Plaintiff did not, however, amend the schedules to include those claims. Accordingly, the court finds that he has asserted inconsistent sworn positions.

Additionally, there is sufficient evidence in the record to infer that plaintiff intentionally manipulated the judicial system.  Plaintiff pursued his claims of employment discrimination while his bankruptcy case was pending, but failed to amend his financial statements accordingly. Moreover, the record is clear that he was aware of the requirement to amend the financial schedules, as he in fact did, on December 7, 1998, to add a creditor and to increase his plan payment.  Plaintiff had frequent contact with the bankruptcy court following the filing of this civil action, yet he failed to advise the court of potential assets of his bankruptcy estate represented by his claims of employment discrimination.  The court concludes, therefore, that plaintiff had the requisite intent to mislead the bankruptcy court, and all of his claims for monetary damages are barred.

**C.     Plaintiff's Claims for Injunctive Relief**

Plaintiff's claims for injunctive relief also must fail.  Plaintiff fails to state claims on which relief can be granted under the Family and Medical Leave Act and the "Federal Workers Compensation Act."  As for his claim under the Family and Medical Leave Act (Count IV), there is no private enforcement mechanism for federal employees, and the Civil Service Reform Act provides the exclusive remedy to challenge agency action.  *See Keen v. Brown*, 958 F. Supp. 70, 74-75 (D. Conn. 1997) (examining evidence of congressional intent to limit federal employees to their administrative remedies).  For the same reason, plaintiff's claim for retaliation based on the Family and Medical Leave Act (Count V) is due to be dismissed.

13

Similarly, plaintiff has failed to state a claim under the "Federal Workers Compensation Act" (Count I). As an initial matter, the court observes that there is no such statute; however, it is assumed that plaintiff intended to assert a claim under the Federal Employees' Compensation Act. The Secretary of Labor has exclusive jurisdiction of claims based on the Federal Employees' Compensation Act. *See* 5 U.S.C. § 8128(b).[22] Accordingly, plaintiff's claim of retaliation based on that statute also is due to be dismissed. *See American Postal Workers Union, AFL-CIO v. United States Postal Service*, 940 F.2d 704, 709 (D.C. Cir. 1991) ("[N]either the CSRA, the FECA, nor any other part of the [Postal Reorganization Act] affords a cause of action to an employee who claims he was discharged in retaliation for filing a FECA claim.").

Plaintiff's remaining claims for injunctive relief for violations of the Rehabilitation Act of 1973 and for retaliation (Counts II and III) also are due to be dismissed, because the court is unable to determine the actual relief sought. In the complaint, plaintiff states only that he seeks "injunctive relief," and "that relief which is fair, just and equitable under the circumstances of the case." Those vague statements provide an insufficient basis for the court to fashion appropriate injunctive relief.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted. A separate order consistent with this memorandum opinion will be issued contemporaneously herewith.

---

[22] 5 U.S.C. § 8128(b) provides:

> The action of the Secretary [of Labor] or his designee in allowing or denying a payment under this subchapter is —
>> (1) final and conclusive for all purposes and with respect to all questions of law and fact; and
>>
>> (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

14

DONE this _13th_ day of August, 2002.

United States District Judge